**COMMISSIONERS OF the SINKING FUND OF the CITY OF LOUISVILLE et al., Appellants,**

**v.**

**OUR OWN DELIVERIES, INC., Appellee.**

Court of Appeals of Kentucky.

June 26, 1964.

Rehearing Denied Nov. 6, 1964.

Harris W. Coleman, Arthur W. Grafton, Edgar A. Zingman, Louisville, for Commissioners of Sinking Fund.

Wilber C. Fisher, Jr., Eugene H. Alvey, Louisville, for City of Louisville.

Bertram C. VanArsdale, Charles P. Sutt, Jr., Louisville, for appellee.

MONTGOMERY, Judge.

The question presented is whether Our Own Deliveries, Inc., a local cartage business, is a common carrier and thus is exempt from payment of a license fee imposed by the City of Louisville on owners of motor trucks, etc., operating on the streets of the city. The City appeals from a judgment holding the cartage business to be a common carrier.

By ordinance the City of Louisville imposed and collected an annual license fee from the owner or operator of various trucks, trailers, etc., operating on the streets of the city. Appellee had operated trucks and kindred vehicles and paid the fees without complaint until May 1, 1955. Since then payments have been made under protest. This action is to recover such fees paid under protest.

The ground of the protest is that appellee qualified and was issued on January 22, 1955, a local cartage certificate as a common carrier under Kentucky Revised Statutes, Chapter 281, Motor Carriers, and thus was no longer liable for the city license fee. A local cartage certificate, formerly defined in KRS 281.010(20) (a), is now defined in KRS 281.014(3) (a) as "granting authority only for the operation of motor vehicles exclusively engaged in the transportation of property for hire between points within a city or within a city and its commercial area." Specific exemption from the city license fee is claimed under KRS 281.830(2), which prohibits the imposition of such a fee on any motor vehicle operated under a certificate with certain inapplicable exceptions.

Appellants contend that prior to issuance of the certificate appellee was in reality a private carrier and that the character of the business was not changed by a 1954 Act placing local cartage carriers under the regulatory requirements of the Act. See 1954 Acts, Chapter 188. There is no argument with the proposition advanced by appellants that a carrier cannot be changed from a private carrier to a common carrier by legislative enactment. Frost Trucking Co. v. Railroad Commission, 271 U.S. 583, 70 L.Ed. 1101, 46 S.Ct. 605, 47 A.L.R. 457; Louisville Taxicab & Transfer Co. v. Blanton, 305 Ky. 179, 202 S.W.2d 433, 175 A.L.R. 1329. However, appellants start with the false premise that appellee was a private carrier before enactment of the 1954 Act.

■ The nature of the business determines the status as common or private carrier, and persons carrying on a transportation business under circumstances which, in law, constitute them common carriers cannot divest themselves of that character by declaring themselves otherwise. Bank of Kentucky v. Adams Express Co., 93 U.S. 174, 23 L.Ed. 872. The president of appellee testified that appellee would deliver cartons for anybody that asked within the area in which it was authorized to operate. The Chancellor on this uncontradicted testimony held that appellee was holding itself out to the public generally to transport merchandise within its authorized territory and thus was a common carrier.

In Robertson & Co. v. Kennedy, 32 Ky. (2 Dana) 430, 26 Am.Dec. 466, decided November 11, 1834, the precise question involved here was answered. Robertson & Company sued Kennedy for the loss of a hogshead of sugar and alleged that he, as a common carrier, had undertaken for a reasonable compensation to carry it from the bank of the river to their store in Brandenburgh. The proof was that Kennedy had been in the habit of hauling for hire with an ox team, in the town of Brandenburgh, for every one who applied to him; that he had undertaken to haul for Robertson & Company a hogshead of sugar on a slide for delivery to their store in Brandenburgh; and that the slide and hogshead had slipped into the river, whereby the sugar was spoiled.

Judge Nicholas therein defined a common carrier in the following terms:

"Every one who pursues the business of transporting goods for hire, for the public generally, is a common carrier. According to the most approved definition, a common carrier is one who undertakes, for hire or reward, to transport the goods of all such as choose to employ him, from place to place. Draymen, cartmen and porters, who undertake to carry goods for hire, as a common employment, from one part of a town to another, come within the definition. So also does the driver of a slide with an ox team. The mode of transporting is immaterial."

The kind of transportation used, whether oxen and slide or truck and trailer, does not change the nature of the business.

This definition has been approved in Parker v. Stewart, 296 Ky. 48, 176 S.W.2d 88. See also Varble v. Bigley, 77 Ky. (14 Bush.) 698, 29 Am.Rep. 435; General Drivers, etc. v. American Tobacco Co., Ky., 264 S.W.2d 250. The provisions of KRS, Chapter 281, Motor Carriers, are in harmony. See definition, KRS 281.011(3).

■ The Chancellor correctly held appellee to be a common carrier. The failure of the Department of Motor Transportation to enforce, or the noncompliance of appellee with the pertinent statutes and departmental regulations, is a matter of administration which does not change the status of appellee. The matter of uniform rates and charges is also a matter of administration.

Judgment affirmed.